# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A11-00659-DMD | Chapter 7 |
| JoHANNA ELIZABETH HAWTHORNE, | |
| Debtor. | |

<div style="border:2px solid red; color:red; text-align:center">
**Filed On
4/4/12**
</div>

| | |
|---|---|
| RENEE ELLISON and LOUIS A. BREUER, | Adversary No. A11-90028-DMD |
| Plaintiffs, | |
| v. | |
| JoHANNA E. HAWTHORNE and LARRY D. COMPTON, TRUSTEE, | |
| Defendants. | |

## REPORT AND RECOMMENDATION REGARDING THE PLAINTIFFS' MOTION TO WITHDRAW THE REFERENCE

To:    The United States District Court

Introduction:

The plaintiffs have filed a motion to withdraw the reference of this proceeding to the United States District Court for the District of Alaska. Defendant JoHanna Hawthorne opposes the motion. The issues have been fully briefed and are ready for determination.

The Bankruptcy Court submits the following report to the United States District Court, and recommends that the motion to withdraw the reference be granted and that the defendant's request for abstention, raised in her opposition, be denied.

Case Background:

The debtor, JoHanna Hawthorne ("Hawthorne"), filed a chapter 7 petition on August 26, 2011.  On her bankruptcy schedules Hawthorne listed Renee Ellison ("Ellison") and Louis Breuer ("Breuer") as creditors having contingent, unliquidated and disputed unsecured claims.  Breuer represented Ellison in a prepetition state court eviction action brought by Hawthorne.  The damages portion of this action was stayed when Hawthorne's bankruptcy petition was filed.

A deadline for filing claims was not set in Hawthorne's bankruptcy case, nor were claims filed.  Larry Compton, the chapter 7 trustee, filed a no-asset report on October 27, 2011.  The debtor's discharge was entered on December 21, 2011, and her case was closed on January 3, 2012.  Compton is named as a defendant in this adversary proceeding, "by virtue of his representation of the bankruptcy estate's interest in the debtor's property."[1]  However, Compton has not filed an appearance herein and, since the closing of the main bankruptcy case, no longer has any interest in the debtor's property.[2]

Ellison and Breuer filed this adversary action on November 21, 2011. Ellison's complaint seeks a determination of "the amount and bankruptcy non-dischargeability of her claims against the debtor, as landlord, and for imposition of an equitable lien on [the

---

[1] Compl., filed Nov. 21, 2011 (Docket No. 1), at 2.

[2] 11 U.S.C. § 554(c).

2

debtor's] real estate."[3]   Breuer joined in the complaint because he was scheduled as a contingent creditor in Hawthorne's bankruptcy proceeding for any attorney fees that might have been awarded for his representation of Ellison in the eviction action.[4]

The counts asserted in the adversary complaint are based entirely upon prepetition events.  It is undisputed that Hawthorne and Ellison entered into a six-month residential "rental lease agreement" effective March 7, 2009.[5]  Ellison gave Hawthorne a security deposit of $925.00 when the agreement was entered.  Just over eight months later, on November 10, 2009, Hawthorne gave Ellison a letter which advised that the term of the lease had expired and that Ellison was now occupying the rental unit on a month-by-month basis.[6]  The letter stated that Ellison had violated certain provisions in the lease and that, because of these violations, the debtor would not renew the lease.  The letter gave Ellison 30 days to vacate the property, but also gave Ellison the option to stay through the end of December, 2009, if she paid rent for that month.  Hawthorne delivered a notice to quit to Ellison on December 10, 2009,[7] and filed a complaint for forcible entry and detainer against her on December 18, 2009.[8]  Ellison left the premises on January 25, 2010,[9] after the state

---

[3] Compl. (Docket No. 1), at 1.

[4] *Id.*

[5] *Id.*, Ex. 1 at 1.

[6] *Id.*, Ex. 4.

[7] Compl. (Docket No. 1), Ex. 5.

[8] *Id.*, Ex. 6.

[9] Compl. (Docket No. 1), at 3 ¶ 18.

court directed that a writ of assistance issue to enable Hawthorne to regain possession of the premises.[10]

Ellison alleges that there were several problems with the rental unit. She says it lacked fire extinguishers, carbon monoxide alarms, and operable smoke alarms. Numerous other defects are listed on Exhibit 3 of the adversary complaint, entitled "Things we've asked to be fixed." Ellison also alleges Hawthorne orally agreed to reimburse her for the cost of window blinds needed for a front window. Ellison spent $317.09 for these blinds,[11] but says she was not reimbursed for this expense. Ellison further alleges Hawthorne refused to accept a tender of rent made on December 5, 2009. Hawthorne denies these allegations, on information and belief.

Ellison's complaint contains 12 counts, which are summarized as follows:

| Count | Title | Allegations |
|-------|-------|-------------|
| First | breach of covenant of quiet enjoyment/wrongful eviction | Hawthorne's actions in evicting Ellison violated the lease and applicable state law, breached the covenant of quiet enjoyment, were tortious and a wrongful ouster, and were willful, wanton, malicious, and in bad faith. |
| Second | breach of covenant of good faith | Hawthorne's Nov. 10, 2009 letter to Ellison (Ex. 4) breached the covenant of good faith implied in residential leases because it contained bad faith, intentional, knowing, and/or reckless misstatements of law or application of law to Ellison's tenancy. |
| Third | unfitness of premises | Hawthorne breached the lease and violated AS 34.03.100 by failing to maintain the premises or make timely repairs of the defects listed on Ex. 3. |

---

[10] Def.'s Resp. to Pls.' Mot. to Withdraw Reference, filed Feb. 8, 2012 (Docket No. 16), Ex. B (state court log notes), at 3-4.

[11] Compl. (Docket No. 1), Ex. 2.

| Fourth | unfair and deceptive trade practices | Hawthorne's failure to furnish or repair fire extinguishers, carbon monoxide alarms and smoke alarms violated applicable law and misled, deceived and damaged Ellison in connection with the sale or advertisement of goods under AS 45.50.471(b)(11), (12), and (14). |
|---|---|---|
| Fifth | retaliatory eviction | After Ellison complained about defects in the property, Hawthorne retaliated by increasing Ellison's rent, decreasing her services, and by bringing or threatening to bring an eviction action. |
| Sixth | breach of separate reimbursement contract | Hawthorne breached an oral agreement by failing to reimburse Ellison for the window blinds. |
| Seventh | attorney fees | Ellison or her attorney are entitled to an award of full attorney fees per AS 34.03.350 and 45.50.537. |
| Eighth | nondischargeability | Hawthorne has done willful and malicious injury to Ellison and/or her property such that Ellison's claims are non-dischargeable per 11 U.S.C. § 523(a)(6). |
| Ninth | nondischargeability (attorney fees) | Breuer's claim for attorney's fees incurred in the state court eviction action derives from Ellison's claims against Hawthorne and, likewise, is nondischargeable under 11 U.S.C. § 523(a)(6). |
| Tenth | equitable lien (security deposit) | Ellison's security deposit is traceable to the cash and financial accounts listed in Hawthorne's bankruptcy schedules and an equitable lien should be impressed upon these assets to the extent Ellison's claims are found to be nondischargeable. |
| Eleventh | equitable lien | An equitable lien should be imposed upon the unencumbered, non-exempt equity in Hawthorne's premises, to the extent Ellison's claims are found to be nondischargeable. |
| Twelfth | equitable lien (attorney fees) | An equitable lien should be imposed upon the unencumbered, non-exempt equity in Hawthorne's premises, to the extent Breuer's attorney fee claims are found to be nondischargeable. |

The adversary complaint states that Counts 1 through 7 are non-core matters, while the remaining counts are core proceedings under 11 U.S.C. § 157(b)(2)(I) and (O). The plaintiffs have demanded a jury trial for the non-core counts and moved for withdrawal of the reference to United States District Court because they do not consent to entry of a final judgment on the non-core counts by the bankruptcy court.

Hawthorne opposes withdrawal.  She asks that the court abstain from hearing the non-core, state law claims.  She suggests that it would be more appropriate for the state court to conduct a jury trial on the non-core claims, reasoning that the bankruptcy court would not need to determine the nondischargeability counts unless the plaintiffs' state law claims were found to have merit and the plaintiffs were awarded damages in excess of zero.

In their reply, the plaintiffs note that "the dischargeability issue is a core matter, [but] since the evidence for resolution of that issue is inextricably wound up with the evidence that will be presented to prove [the non-core claims]," withdrawal of the entire proceeding is appropriate.[12]  The plaintiffs also argue that Hawthorne has not properly moved for abstention.

<u>Analysis</u>:

Bankruptcy judges may hear and determine core proceedings.[13]  A bankruptcy judge is to determine, *sua sponte* or on motion of a party, whether a matter is a core proceeding.[14]  A bankruptcy judge may also hear a non-core, related proceeding, but in such a proceeding,

> the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after

---

[12] Reply to Def.'s Resp. to Mot. for Withdrawal of Proceeding to the District Court, filed Feb. 21, 2012 (Docket No. 17), at 2.

[13] 28 U.S.C. § 157(b)(1).  In accordance with 28 U.S.C. § 157(a), the United States District Court for the District of Alaska issued an Amended General Order referring bankruptcy cases and proceedings to the bankruptcy court on May 27, 1985.

[14] 28 U.S.C. § 157(b)(3).

> considering the bankruptcy judge's proposed
> findings and conclusions and after reviewing de
> novo those matters to which any party has timely
> and specifically objected.[15]

A district court may refer a non-core, related proceeding to the bankruptcy judge for determination only with the consent of all parties to the proceeding.[16] Regardless of whether a matter is core or non-core, a bankruptcy court may not conduct a jury trial in a proceeding unless it has been specially designated to exercise such jurisdiction and all parties to the proceeding have expressly consented to the bankruptcy court's jurisdiction.[17]

Proceedings are "non-core" "if they do not depend on the Bankruptcy Code for their existence and they could proceed in another court."[18] All of the plaintiffs' state court claims, Counts 1 through 7, are clearly non-core. They were asserted in the state court eviction action which was stayed when Hawthorne filed her chapter 7 petition.[19] Further, Ellison demanded and had a right to trial of those claims by a jury.[20] She does not consent to trial of these issues before the bankruptcy court.

Actions to determine the dischargeability of a debt are core proceedings.[21] It is well settled that there is no right to a jury trial in such actions because they are equitable

---

[15] 28 U.S.C. § 157(c)(1).

[16] 28 U.S.C. § 157(c)(2).

[17] 28 U.S.C. § 157(e).

[18] *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004).

[19] 11 U.S.C. § 362(a)(1).

[20] *Chilton-Wren v. Olds*, 1 P.3d 693, 698 (Alaska 2000).

[21] 28 U.S.C. § 157(b)(2)(I).

in nature.[22]   Further, "because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt," a bankruptcy court may render a money judgment in a nondischargeability action."[23] The court may do so even if the underlying state court claim has not yet been reduced to final judgment.[24]

Although the Ninth Circuit has stated that the bankruptcy court may liquidate a nondischargeability claim "without the assistance of a jury,"[25] it discussed this point in two cases where a jury trial was not demanded and the parties to the litigation had consented to bankruptcy court jurisdiction.[26]   The Ninth Circuit has also indicated that the bankruptcy court's liquidation of a breach of contract claim, after finding such claim to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), was a legal determination "within the ambit of the Seventh Amendment."[27]   In that case, however, because there were no contested issues of fact, the court declined to address the issue of whether a bankruptcy litigant in a

---

[22] *Am. Express Travel Related Serv. Co., Inc. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1124 (9th Cir. 1996).

[23] *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 870 (9th Cir. 2005), *citing Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997).

[24] *Kennedy*, 108 F.3d at 1017-18.

[25] *Sasson*, 424 F.3d 870.

[26] *See Kennedy*, 108 F.3d at 1016 [the parties in the nondischargeability action dismissed their state court action and agreed to litigate all elements of their fraud claim before the bankruptcy court]; *Sasson*, 424 F.3d at 867 [creditor's complaint to determine nondischargeability of a claim previously reduced to judgment in state court was tried by bankruptcy court].  In both cases, the issue addressed was whether the bankruptcy court had jurisdiction to *liquidate* the amount of the nondischargeability claim, not whether there was a jury trial right as to such liquidation.

[27] *Hashemi*, 104 F.3d. at 1124-25.

8

nondischargeability action had waived his right to a jury trial.[28]  Fed. R. Civ. P. 38(a), made applicable to bankruptcy cases and proceedings pursuant to Fed. R. Bankr. P. 9015(a), provides that the "right of trial by jury as declared by the Seventh Amendment . . . is preserved to the parties inviolate."[29]  Accordingly, it appears that Ellison is entitled to have a jury liquidate any portion of her claim which is found to be nondischargeable under 11 U.S.C. § 523(a)(6).

Hawthorne's request for abstention is appealing at first glance.  She suggests that the plaintiffs' state law claims be tried by a jury in the state court proceeding, and that the parties only return to the bankruptcy court if the plaintiffs are awarded damages in excess of zero.  However, this course of action may not be the most efficient.  Assuming Ellison prevailed on any of her non-core counts in state court, that court's ruling would not be helpful in determining the issue of nondischargeability under § 523(a)(6).  To except a debt from discharge under § 523(a)(6),  the "willful" and "malicious" prongs of the dischargeability test must be analyzed separately.[30]

> A "willful" injury is a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhu v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 947, 140 L.Ed.2d 90 (1998) (emphasis in original).  "A 'malicious' injury involves  (1)  a  wrongful  act,  (2)  done

---

[28] *Id.*  Litigants who file claims in a bankruptcy proceeding submit to the bankruptcy court's equitable jurisdiction, and those claims may be liquidated by the bankruptcy court without a jury trial.  *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989).  However, as noted above, a claim bar date was not set in the instant adversary proceeding, and neither Ellison nor Breuer have filed claims in the main bankruptcy case.

[29] Fed. R. Civ. P. 38(a).

[30] *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 711-12 (9th Cir. 2008)

9

intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Su*, 290 F.3d at 1146-67 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).[31]

A state court trial on counts for breach of contract or violations of state statute would not address the two prongs of the § 523(a)(6) nondischargeability test. A debt arising from an intentional breach of contract is not excepted from discharge under § 523(a)(6) unless the breach is "accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'"[32] Similarly, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[33] Further, conduct found to be "willful" under non-bankruptcy statutes is not necessarily a "willful and malicious injury" under § 523(a)(6).[34]

The plaintiffs' state law counts cannot survive Hawthorne's bankruptcy discharge, unless and except to the extent that any of those counts are found to be a debt for "willful and malicious injury by the debtor to another entity or to the property of another

---

[31] *Id.* at 706.

[32] *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002), *citing Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001).

[33] *Kawaauhu v. Geiger*, 523 U.S. 57, 64 (1998).

[34] *See Barboza*, 545 F.3d at 707-08 ["willful" as used in copyright infringement cases can be based on reckless or negligent conduct, and is not equivalent to "willful" standard under § 523(a)(6), which requires a "deliberate or intentional" injury]. An "unknowing affirmative misrepresentation of material fact" will give rise to liability under AS 45.50.471. *See Borgen v. A&M Motors, Inc.*, __ P.3d __, 2012 WL 1058864 (Alaska Mar. 30, 2012). One of the plaintiffs' non-core counts is for violation of this statute. An unknowing or reckless misrepresentation that would give rise to liability under the state statute would not satisfy either prong of the § 523(a)(6) dischargeability test.

entity."[35]  While the same operative facts must be considered to determine both the core and non-core counts the plaintiffs have asserted, jurisdiction to determine the dischargeability of debts for willful and malicious injury under 11 U.S.C. § 523(a)(6) lies exclusively within the District Court and, by that court's order of reference, the bankruptcy court.[36]  A § 523(a)(6) count cannot be determined by the state courts.

Considering that the non-core counts will not survive Hawthorne's discharge except to the extent that a "willful and malicious injury" under § 523(a)(6) is found, and the fact that the state court cannot determine a § 523(a)(6) claim, abstention does not make sense. Nor would it make sense to bifurcate this action so that the bankruptcy court determines the equitable, core issue of nondischargeability and the District Court, with the aid of a jury, determines the legal issue of damages.  As the Ninth Circuit has recognized, it is impossible to separate the determination of dischargeability from the function of fixing the amount of the nondischargeable debt.[37]  Judicial economy and the plaintiffs' jury trial rights are both best served if the reference is withdrawn to the District Court.  For these reasons, the Bankruptcy Court respectfully recommends that the plaintiffs' motion to withdraw the reference be granted, and Hawthorne's motion for abstention be denied.

DATED:  April 4, 2012

BY THE COURT

/s/ Donald MacDonald IV

---

[35] 11 U.S.C. § 523(a)(6).  The "discharge injunction" of 11 U.S.C. § 524(a)(2) prohibits further prosecution of the plaintiffs' state law claims, except to the extent that the plaintiffs prevail on their nondischargeability counts.

[36] 11 U.S.C. § 523(c)(1).

[37] *Sasson*, 424 F.3d at 870, *citing Kennedy*, 108 F.3d at1017-18.

DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  L. Breuer, Esq.
   E. Conard, Esq.
    4/4/12